Curia, per
Nott, J.
The Chancellor has granted an injunction, and this is a motion to reverse that decision. The Chancellor who granted this injunction seems to have been impressed with the novelty and importance of the question, and although, he granted the injunction, seems to have doné so with that cautious doubt which such a case was calculated to excite. I agree with him that a want of jurisdiction is not to be inferred alone from the novelty of the question. For it is not every new case that involves a new principle. The fact, however, that no such question has ever before been agitated in our Courts is a strong reason why we should pause before we act ^ and that we ought not to proceed before *306 we, can see some clear and well grounded principle to author¡ze the procedure. The jurisdiction of the Court of Equity is an extraordinary jurisdiction. .And it is only where the ordinary tribunals of justice cannot afford relief that a Court of Equity is authorized to interfere. Hence the well established maxim, that a Court of Equity cannot entertain jurisdiction of a cause where the party mi ' • has a plain and adequate remedy at law. That is not only a well settled principle in England, but is recognized in this country, and re-enforced by an express provision of the act of assembly of this state passed in the year 1791. And even though it be admitted that that clause is nothing more than a recognition of 'the com-, mon law maxim, it must .have been intended at least to give emphasis to a provision somewhat calculated to set bounds to the vague jurisdiction of that Court. The people of this state have a veneration for the principles of the common law; they have an attachment for the trial by jury which they will not readily transfer to any other tribunal. And whoever will trace the progress of equity jurisdiction, will find that it has been gradually advancing, step by step, to the consummation of its power, until there is scarcely a case in the annals of litigation over which its empire has not been extended. It is true that this jurisdiction is somewhat of that undefinable nature that renders it difficult to make out its bounds with such precision as to render them at first glance distinctly visible. But I am nevertheless of opinion, that by attention to particular cases as they occur, certain principles may be established, beyond which it will not be permitted to go, and within which, the exercise of its power cannot be dangerous. The extent of the chancery jurisdiction on this subject is pretty fully discussed, and the history and progress of it traced up with a good deal of learning and research by Chancellor Ds Saussube in a note to the case of Shubrick v. Guerard, 2 Desaus. Rep. *307 619. The subject has also undergone the review of Chancellor Kent in several cases before him in New York. Kane v. Vanderburgh, 1 Johns. Cha. Rep. 11. Stevens v. Beekman, 1 Johns. Cha. Rep. 318. Douglass and others v. Wiggin and another, 1 Johns. Cha. Ca. 435. Livingston v. Livingston, 6 Johns. Cha. Rep. 497. See also Eden on Injunctions, 157, under the head of injunctions to stay purprestures and nuisances. In these authorities all the cases will be found collected in which the principle is involved, and although there is some little contradiction in the cases, we shall find the general rule to be, that a Court of Equity ought not to interfere to prevent a mere trespass. And though old rule on that subject seems to be somewhat relaxed, J ... and according to Lord Eldon injunctions are now granted more liberally than formerly, yet it appears to that the principle is still preserved, and the greater . ... 7 . . rality in granting injunctions seems to consist m the application of the rule to a greater number of cases than formerly, rather than in the extension of the principleof itself. There must be, as Judge Kent expresses it, thing particular in the case, so as to bring the injury under the head of quieting possession, or to make out a case of irreparable mischief, or where the value of the inheritance is put in jeopardy. Livingston v. Livingston, 6 Johns. Cha. Rep. 501. See also 1 Madd. Cha. 138, tit. Injunctions to stay waste. The true ground is, that the injury must be of such a nature that the party cannot have adequate remedy at law. Whenever there- , lore the trespass amounts to waste, nuisance or other irreparable injury, the Court of Equity interposes way of injunction and not otherwise. The same rule applies in the cases of specific performance. And although the cases of this description are not directly applicable to the case now under consideration, yet they may tend to illustrate the general principles of equity *308 jurisdiction. The general rule in those cases is, that the Court will not direct the specific delivery of a chattel. And for the reasons before stated, because the party has pla>n and adequate remedy at law. Nor would the re-mec^ ^e considered inadequate, merely because the specific article might be made more convenient or gratifying , to the party than damages for withholding or destroying it. To this rule however there are exceptions. In the progress of society cases will necessarily spring up, peculiarly applicable to a more advanced state of civili-while others will be left behind which had their origin in art age comparatively rude and barbarous. ■Among others might be mentioned articles which have acquired an ideal or perhaps a real value from the peculiar situation of the owner, and for the loss of which no damages would be a compensation. Such as the Pusey horn, by which the complainant held his land. Pusey v. Pusey, 1 Vern. 273. Or the silver altar piece, being a matter of antiquity and curiosity, in the case of the Duke of Somerset v. Cookson, 3 P. Wms, 390. So in the case of Fells v. Read, 3 Ves. Jun. 70, Lord Rosslvn decreed the delivery of the silver tobacco box, which had for a great many years belonged to a society; because, from the nature of the thing, the value was inestimable. A similar decision was made by Lord Eldon in the case of Lady Arundel v. Phipps, 10 Ves. 148, which involved a question in relation to family pictures(1). These are cases which have their foundation in the refinement of society, and those affections of the heart, which it would be a reproach to the country not to indulge. But still they depend on the plain tangible principle, that there is no adequate remedy at law — and the principle must not be extended to cases founded in *309 weakness and folly. It would therefore be a perversion of the rule to apply it to the delivery of a favourite spaniel, or a lady’s lap dog.
Equity can only give relief where law cannot,
Equity will J?®1'® *iesPass. There must be something P°s" session, prevent irrepara-o^tiie'vaiue3 the inh?ri-tance put in
The remedy as in waste, nuisance ana irreparable
In what wmorder^ speel'fiery chattel.
For equity to ^efof nuis-anée> ¡t must be such as could cause abtetmp°!'ai’y before’ ^quityVaT enjoin a puttiQg°up a ^ngaditch*1' across a road,
There is a class of cases to which it is contended the one now under consideration more immediately belongs, in which it is admitted a Court of Equity will interfere: I mean private nuisances. But the same rule applies even in those cases. The nuisance must be such as will cause an irreparable injury to an individual such as no J J damage would compensate. Eden, 157. 3 Atk. 751. 161. 16 Ves. 342. Moore, 145. 1 Bro. C. C. 588. 10 Ves. It is not every trifling diminution of the value of property, nor a mere temporary injury, that will authorize the terference of the Court of Equity. Eden, 154, et infra. The cases where the Court has interfered are the ping of ancient lights, diverting water courses, &c. But then the stoppage must be by some permanent wall or building, which would amount to a perpetual privation of enjoyment and which, therefore, could not be repaired in damages. The bare planting of a tree, or hanging up a sign, which could easily be removed upon establishing the right at law, would not be sufficient. The same might be said of diverting a water course. It must be by some work of a permanent nature, and not merely by throwing a log across a stream, which might be easily removed. Now, what is the nuisance here complained of which is about to be erected,1? The building a fence across a road, or cutting a ditch, either of which could be done in less time than a bill for an injunction could be drawn, and might be removed in less time than a motion for the dissolution of the injunction could be argued. It is not a case which requires the aid of this Court, and certainly not until the right has been determinéd at , law. Neither are the circumstances such as to require the interposition of the Court until such trial can be had. *310 The decree therefore must be reversed, and the bill dismissed with costs.

Decree reversed.

 See on this subject ante, Rees v. Parish, and post, Farly v. Farty and Robertson v. Bingley.